2007, 1430, concerning lithographic printing plates, and you're going to give us the whole picture. I hope so, Your Honor. My name's Ken Weigel. I'm a partner at Alston & Byrd. As he said, I'm here today representing AGFA Corporation in a tariff classification dispute concerning printing plates. We believe this is a simple case of statutory construction. There are two tariff terms at issue. One is heading 8442, which provides for, among other items, printing plates. And it provides for printing plates both by name, eonominy, and by use. The second tariff provision at issue is heading 3701, which provides for photographic plates. I plan to focus today on why heading 8442 covers the merchandise, because I believe if the court finds that it covers the merchandise, then under general rule of interpretation 3, which is the rule we use for competing tariff provisions, heading 8442 wins. But in order for us to agree with you, then we have to ignore the explanatory note in 8442. You don't have to ignore the explanatory note in 8442. The explanatory note in 8442, we believe, is confusing. The explanatory note in 8442 talks about a lithographic printing plate. Clearly puts it within the scope of 8442. Then at the bottom of 8442, for some reason, the explanatory note states that sensitized plates are excluded. Well, every offset... You say for some reason. The fact is it stated that, didn't it? It does state it. And then it refers to heading 3701. Correct, Your Honor. However, every offset lithographic printing plate is sensitized. And they were in that form as came out of trial at the time the tariff was put into effect in 1989. So we find the explanatory notes confusing. What we suggest is that the court look at the language passed by Congress. Don't worry about the explanatory notes. As the courts have always said, they're for guidance. Don't look at what's unfavorable to your case. No, that is not what I'm saying, Your Honor. I am saying that under rules of statutory construction in GRI 1, you look at the language of the statute. You do not then look for ambiguities in the language of the statute. But what if we conclude that the 2, it could fall under either the 3701 or the 8442? Then are we allowed to look at the explanatory notes? No. No, I don't believe you are, Your Honor. I believe then you look at GRI 3, and GRI 3 says the most specific, or if you cannot determine which is the most specific, the last in the tariff schedule, the last provision in the tariff schedule controls. So when are we allowed to look at explanatory notes when there's ambiguity? And you think that 8442 is clearer than most, all, or whatever of these types of provisions? I think it is extremely clear. It provides, as I say, for printing plates by name, and then it provides for plates prepared for printing purposes, i.e. printing plates by use. Congress could not have been any broader in its definition. Congress did not look at the explanatory notes. You're talking about photographic printing plates? Pardon me? What kind of printing plates? This is a lithographic printing plate that's at issue. Today, almost all printing plates are processed for printing. When a printer receives them, years ago they were carved in wood or in stone. Then you had the lead, and the lead would come in to create the printing image, and the linotype it was called. Since roughly the 60s, but the record's clear on this below, it's changed to offset printing. You create what's to be printed in a computer. The computer then creates that document. You take that to a computer to plate setter machine. You put a plate in. It puts the design on the plate. It removes. As imported, this prints a totally black page. These are used for newspapers, so just to get some idea. Every page of a newspaper uses one of these plates, and then they're discarded. The aluminum's recycled. As they're imported, it would print entirely black. What happens is through here, it's a laser. Parts of this are sensitized, either harden or soften, then can be washed off, so only the surface where you want ink to stick remains. The surface below is just as important. That's where the water has to stick, and that's a grained aluminum layer. What we have, we believe, is a heading 8442, which says on its face, printing plates. There is no exclusion in there. Nowhere in the language of the statute does it say sensitized printing plates are excluded. The court came up with that only through the explanatory notes. The court also, and we believe this is a factual error the court made, discusses photolithography. This is not photolithography. Photolithography is something entirely different than printing. What about photo—is printing a photo-mechanical process? Printing is a mechanical process. The preparation of the printing plate or the processing of the printing plate arguably could be called a photo-type of process. It's a radiation process. Well, if it is a photo-mechanical process, clearly 3701 deals with that, right? 3701 deals with photographic plates. If you look at the language of the statute, and that's our point here, is we need to focus on the language of the statute. When the statute is clear, and whether we're dealing with the tariff schedule or any law passed by Congress, extrinsic aids are used when the statute is not clear. They are not used when the statute is clear. Just as in the prior case, there may be an issue with only if, we don't believe there's any issue with printing plates. If we had an expert testify a trial, a printing plate is a printing plate. These are sold as printing plates. They're used as printing plates. They are considered printing plates by the trade. Only the tariff, only customs considers them photographic plates. And the only reason customs does that is because of the explanatory notes. So the issue before the court is whether the explanatory notes, something that's created by a body called the World Customs Organization in Europe, can be used to change U.S. law. And if that proposition is true, I think this is a much bigger issue than just this small case. But the Court of International Trade also concluded that the photographic plate is not a term of art, and you're saying it has an ordinary well-accepted meaning beyond. We believe it does. We disagree with that finding of the Court of International Trade. Is that a factual finding? I believe it would be a factual finding, whether photographic plate. But I believe what the court did once it made that finding is it split the words photographic and plate, which is improper. And I believe that's improper as a matter of law to parse a statute in that effect. This court is charged de novo with determining what a statute means. And the HTSUS is a statute, so we're dealing with the construction of statutory language. So I think it's important that the court understand that, as we say, we believe this is a simple case. The explanatory notes don't enter into it. You'd never get to them. You look at the law. In the recent Degusa case, which is now pending before the panel on a petition for re-hearing, the court gave considerable emphasis to explanatory notes in trying to determine which of two headings was correct. But the explanatory notes can be used if there is an ambiguity. Here, the explanatory notes create an ambiguity. As this court said in Michael Sagan's— How do the explanatory notes create an ambiguity here? The world, other than those who read the explanatory notes, would understand this is a photographic plate. This is a printing plate. This is the printing plate, as important. And this is a photographic plate. Two entirely different products. Customs, as I said, admitted that but for the explanatory notes, we wouldn't be here. So— Where did they admit that? It is cited in our brief. It was in a deposition of the National Import Specialist. And is that what the Court of International Trade also found, relied exclusively on the explanatory notes? The Court of International Trade, we believe, did rely exclusively on the explanatory notes to reject the use of heading 8442. What the court did, I think, was very interesting but I think wrong. It redefined our merchandise— I missed that in your brief. Do you remember where you said that in your brief? Joint Appendix, page 307, is the deposition, Your Honor. What the court did, in answer to your question, was it found the printing plates to be, quote, sensitized plates. Then it looked at heading 8442 and said, I don't see anything in here for sensitized plates. I see printing plates but not sensitized plates, therefore— Joint Appendix 307 is really useful. Everything is blocked out. Can you tell me where it's saved? Page 38, lines 11 through 20. Which? It's the top quadrant, Your Honor, lines 11 through 20. Yeah, the question was if we didn't have the explanatory notes. This is a hypothetical world. If we didn't have the explanatory notes, would you agree with me that 8442 would be an appropriate place to put this? Answer, I wouldn't disagree with you. If I didn't have the guidance to go elsewhere and there were no other guides for me to be directed by, for example, case law, administrative rulings, then I would probably conclude as you just did, which, again— That's getting back to only if. But I think here, Your Honor— You don't have the explanatory notes. The resort to the explanatory notes I think is just wrong. I think is wrong as a much broader legal issue than is presented to this court. And I believe this court has decided this in the past. If we are to allow multilateral bodies to amend law by creating, quote, notes as to what the U.S. law means, I think we have a big problem. Sounds terrible. It is. And that's exactly what has happened here. It's interesting. Many countries are not following these explanatory notes. You're into your rubato. Would you like to save it or use it? Save it, please. Thank you. As well, sir. May it please the Court. From the first to the last analysis of the statutory language, effect must be given to statutory or legislative intent. Courts interpret the statutory language to carry out legislative intent, and the first source for determining legislative intent is the statutory language. That is precisely what the trial court did here. It may not have looked at heading 8442 first, but it certainly utilized the tools provided by Congress with respect to its analysis of heading 3701 and chapter no. 2. But let's go back to the point. This question should not come as a surprise to you, which is that in the absence of the explanatory note in 8442, would the government have taken a different position? Well, quite frankly, the government took the position that it took in this case, whether the explanatory note existed or not. For sure, two national import specialists for customs testified under oath at their deposition that if the EN didn't exist, if there were no case law, if there were no other sources for them to turn to, for sure, they would agree with Appellant Agfa in this case. But that's not the real world here. But the real world, you're saying, is an exclusively explanatory note, but that's a big piece of it, right? It's certainly a part of it. And Congress has stated that this court and the CIT may look to the explanatory notes in interpreting the terms of the statutory provisions of the Harmonized Tariff Schedule. So even if the court were to look to that solely, if customs were to solely rely on those explanatory notes, it most certainly could. What are the rules here? I mean, there may be a disagreement on this, but some people think that if the statute is unambiguous, then you don't reach legislative history. Would you say that that rule applies? For instance, if 8442 were clear and unambiguous, would we give less weight to what the explanatory notes say? That's a hypothetical that I'm uncomfortable with, Your Honor. However, I will try to respond to it. Well, I guess including, if you could respond, is it the government's view that 8442 is clear or ambiguous? I think it's broad. And to the extent that it is as broad as it is, it could be perceived as ambiguous. But I think that you don't reach heading 8442 in a vacuum. I think you read it together with the other relevant tariff provision that is at issue here, and that is heading 3701 and Chapter 3702. When you read these three provisions together, there is clear legislative direction. And the direction that is provided is that photographic plates go in Chapter 37, and all the others that are used for printing purposes go in 8442. This is done throughout the tariff schedule. Ms. Walsh, let me ask you this question. I'm sorry, sir. Given that, if you're correct, why are the plates in question not photographic? Why are they not printing plates? Why are they photographic plates? Because Congress said that they are. By dividing photographic, the term photographic, in Chapter 3702. By providing the definition photographic. So by photographic in 3702, and they're talking about, you know, using action, you do your etching by light or any other form of radiation, right? Correct. Then anything that etches the plate, like this one does, the computer is using some form of radiation, that's your point? I would go a little bit further than that, but what your Honor just stated is a part of my point. A printing plate is something that somebody's going to hand put stuff into, right? You know, like in the old days, you've seen how they used to make newspaper typesetters? Oh, absolutely. You have a plate and you drop the type down into it? Absolutely. I would say that... So when we're talking 8442.50.10, whatever that was, that printing plate is an antique, old thing, you know, that nobody would use anymore, essentially? I think it includes that, your Honor. And I think it also includes, and I thank you for asking your question the way you did, because it certainly would help me if I could say yes. Is there any form of modern printing plate other than what the typesetters used to do and just sort of drop the type in, you know, and line it up and then run it through and then save all the type? Is there any type of printing plate that would not fall under Chapter 37? Okay. The answer to your question is this, your Honor. Chapter 37 covers a certain category of photographic plates, which could include and does include printing plates that are unexposed and undeveloped. In separate provisions within that chapter, it includes those that have been exposed and those that have been developed. I would point the Court to the statutory language contained on page 355 of the appendix. Heading 3705 covers photographic plates and film exposed and developed other than motion picture film. The very first subheading of that provision encompasses offset reproduction plates. The merchandise at issue here are offset printing plates. However, they come into this country unexposed and undeveloped. If you've already done your exposure over in Paris or someplace like that, they come in free? Correct. I will go even further to point the Court's direction to page 361 of the appendix, the explanatory notes for heading 3705. Now, if you read the heading itself, it would appear that it includes all offset plates. However, it does not include those developed plates for printing purposes that are ready for use. And it specifically and expressly points you to heading 8442. So, Your Honor, the answer to your question is that some printing plates are classifiable in heading or in Chapter 37, and those that are ready for use upon importation fall within 8442. The trial court correctly construed the tariff language that is at issue here. It first looked to Chapter Note 2 of 37. It used the definition provided by Congress to construe the term photographic plates. It correctly construed that term. They used the term to define the term photographic. That's correct. And then Chief Judge Roshani hived that onto plate. Correct. And that's what Congress intended to be done here. So, in our view, a legislatively provided definition cannot be trumped by common meaning for the term printing plate. It can't be trumped by the use of the merchandise. But, moreover, when you look at the language of the headings that are at issue, the language of the Chapter Note at issue together with the explanatory notes, which are useful for construing the scope of a heading, it's crystal clear. The explanatory notes for Heading 3701 include this merchandise. The explanatory notes for Heading 8442 exclude this merchandise. One provision expressly includes. The other expressly excludes. So the trial court did everything correctly here. The only thing that is incorrect about this case is that AGFA persists in trying to have the court ignore Chapter Note 2, which wasn't even really discussed during its opening argument here. They focus their attention on a provision in a vacuum, and we're requesting that this court do as the trial court did, which was to look at all of the statutory language at issue. It isn't that your adversary ignored Chapter Note 2. He said it was misapplied because the trial court hived photographic on the photographic plate. He argues that there was an impermissible bisection. Actually, quite frankly, I stand corrected. What's your response to that? It's not impermissible. He didn't ignore it. I mean, you said he ignored it. He met that argument by saying, well, Chief Judge Verstein should not have separated out photographic from photographic plate. Well, this is done all the time in statutory interpretation. If you look at the definition for plate, you can't find one for photographic plate in standard dictionary. So there's no plain understanding of the meaning of the term. Throughout their arguments before the trial court, they referred to it as a term of art. A term of art can't trump common meaning, and it certainly cannot trump a legislatively provided definition. So if you look up the word photographic plates, you're not going to find it.  What am I to make, Ms. Walser, of the general comment that's right below Chapter Note 2, where they're now talking about photographic plates, right? I'm sorry, Your Honor. If it's on page 357 of the record, you had referenced the trial court's reliance on Chapter Note 2, I believe. You're looking at the explanatory notes for Chapter 37? Yes, ma'am. Yes, ma'am. Okay. And you point out, and you put a certain amount of weight on Chapter Note 2, if I'm not mistaken, right? Oh, absolutely. I put a lot of weight on it. My point is that the other side is making a whole lot out of the fact that, oh, well, I agree that I can't run away from what photographic means in Chapter Note 2, but that's all sort of irrelevant because it doesn't involve a plate. And I'm taking you down to the first sentence under the general comment, the photographic plates, okay, of Chapter 37. Are those, isn't he now telling me, in essence, relating back to the definition of photographic? Talking about how through radiation, blah, blah, blah, you get your image? Correct. Why isn't that support for your argument that photographic plate isn't defined and reads right on the accused product? Our position is that the merchandise at issue is classifiable in Heading 3701 based upon Chapter Note 37, Note 2. Page 357, Your Honor, deals with the explanatory notes, and our position is that they buttress and support construction of the statutory notes. I'm just trying to get at what, when the general, what's the effect in this world of a general comment that follows a chapter note? It's not an explanatory note. Page 357, Your Honor, is the explanatory note for Chapter 37. The actual note to Chapter 37, the statutory language appears on page 351. We would argue, and do argue, that the explanatory notes to the chapter itself, which Your Honor was just reading from, buttress and support the classification that was decision made by customs in this case, because it expressly states that the photographic film and plates of this chapter contain emulsions, and that they can be used for a variety of purposes, including and not limited to a photomechanical process. But these are, as has been stated repeatedly by AGFA in the litigation in this case, these are explanatory notes that are contained on page 357. And I would encourage the court to utilize them as a useful tool for interpreting statutory provisions at issue in this case, when considering whether or not the trial court correctly classified this merchandise, which we believe it did, and we would request that you affirm the judgment below. There is one final point I'd like to make, just in the event that it is brought up during the rebuttal. AGFA pointed out in its reply brief, and I believe also in its opening brief, that the court's decision in Michael Simon regarding explanatory notes somehow or another supports its position here. I just want to point out to the court that Michael Simon, which was recently decided, basically echoed the sentiments of this court that were expressed in several cases that I have personally handled. Midwest, Park v. Smith, and also another case, Rubies. And that is that you don't look towards limiting characteristics of exemplars that are in explanatory notes to limit the terms of a statutory provision. However, numerous decisions of both this court and the lower court here have found that if there is an express inclusion of merchandise or exclusion of merchandise contained in explanatory notes, it is generally an indication of legislative intent to include or not include it within a specific statutory provision. So I just wanted to note that the limiting characteristics was where the court did not find an express or a statement, but construed the scope of a provision based upon examples contained in an explanatory note. Again, the trial court's decision should be affirmed. Thank you. Thank you, Ms. Walzer. Mr. Weigel has a little rebuttal time. Thank you, Your Honors. Just a few points. First, on Chapter 37, and I won't dwell on it because it continues to be our position that there can be two, there can be three, there can be four provisions on a tariff that apply to an article. GRI 3 directs the courts how to pick among those provisions. GRI in Chapter 37, Note 2 discusses photographic. If you go through Chapter 37, you will find there's a provision or two for chemicals used in photographic applications or something similar to that. We believe that is why this definition is there. This is a common definition of photographic as our expert testified at trial. Second, if you look at what the CIT did in the Brother case cited in our brief, the CIT, faced with a similar situation, found that 3702, which involved the film, did not cover a product that operated, as customs argued, on a photographic principle. Therefore, I think it's clear, and I think the CIT has recognized this, that not everything that's photographic goes in Chapter 37. Everything, almost in the world, is affected by radiation. We are affected by radiation. Pieces of acrylic plastic can be etched with radiation. That does not make acrylic plastic a photographic plate. Going back to the explanatory notes, again, Ms. Walzer, in her comments, gave another example of the problem we have here with the explanatory notes. Photographic plates are, according to customs, printing plates when they're unexposed. However, even though the tariff provides for exposed photographic plates, these all of a sudden are transformed from a photographic plate to a printing plate. At trial, our expert testified that these, in the condition as imported, are known as printing plates. They're ready to be put in the printing process. These are sold to the Washington Post, the New York Times, USA Today. They go right into the printing line for today's newspaper. Another point, yes, there are many types of plates. Congress recognized that. There's photographic plates. There's printing plates. There's baseball plates. There's dinner plates. If a dinner plate has an emulsion on it, is it a photographic plate? No. I believe it still remains a dinner plate. You cannot take one provision of the tariff and expand it to cover the universe, which is what customs is trying to do here. When you have another provision that is more specific, statutory construction, GRI 1 tells you to go to that provision. I think that ends my comments for today. If you have any questions, I'd be happy to answer them. Thank you. Thank you, Mr. Weigel. We'll take the case under review. Thank you. All rise. I'm going to put his address at the bottom of the name.